[No. C067164. Third Dist. Nov. 13, 2012.]

STOCKTON CITIZENS FOR SENSIBLE PLANNING et al., Plaintiffs and
Appellants, v.
CITY OF STOCKTON et al., Defendants and Respondents;
WAL-MART STORES, INC., et al., Real Parties in Interest and
Respondents.

## COUNSEL

William D. Kopper for Plaintiffs and Appellants.

No appearance for Defendants and Respondents.

Sheppard, Mullin, Richter & Hampton, Robert J. Stumpf, Jr., Arthur J. Friedman and Elise K. Sara for Real Party in Interest and Respondent Wal-Mart Stores, Inc.

Briscoe Ivester & Bazel, John Briscoe and Lawrence S. Bazel for Real Party in Interest and Respondent A.G. Spanos Construction, Inc.

## Opinion

**BLEASE, Acting P. J.**—Plaintiffs Stockton Citizens for Sensible Planning, Rosemary Atkinson, Paul Diaz, and Susan Rutherford Rich petitioned for writ of mandate to direct defendants City of Stockton (City) and Stockton City Council to vacate its approval of a Wal-Mart Supercenter in the A.G. Spanos Business Park Development in Stockton. After our Supreme Court issued its decision in *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 489 [106 Cal.Rptr.3d 858, 227 P.3d 416] (*Stockton Citizens*), holding that plaintiffs' California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) cause of action was barred because the suit was not commenced within 35 days after the notice of exemption (NOE) for the project was filed (Pub. Resources Code, § 21167, subd. (d)), the trial court entered judgment on the pleadings in favor of City and real parties in interest Wal-Mart Stores, Inc. (Wal-Mart), A.G. Spanos Construction, Inc. (Spanos), and Doucet & Associates, Inc. (Doucet), on plaintiffs' remaining claims on the ground they were time-barred under Government Code[1] section 65009, subdivision (c)(1)(E), because the suit was not commenced within 90 days after City approved the project.

Plaintiffs appeal, contending City's approval of the project, which was in the form of a letter to real parties from the director of City's Community Development Department (Director), did not trigger the 90-day limitations period under section 65009, subdivision (c)(1)(E), because that subdivision is limited to challenges concerning variances and permits issued after a decision by a legislative body.

We shall conclude that section 65009, subdivision (c)(1)(E), is not so limited, and that it applies to the Director's approval of the Wal-Mart Supercenter project because the Director was acting as City's zoning administrator and was exercising powers granted by local ordinance when he approved construction of the Wal-Mart Supercenter. Because plaintiffs' second cause of action alleging planning and zoning violations was not commenced within 90 days of the project's approval, we shall conclude it is time-barred. Because the remaining causes of action are dependent upon the timeliness of the second cause of action, we shall further conclude that those causes of action are time-barred as well. Accordingly, we shall affirm the judgment.

---

[1] Undesignated statutory references are to the Government Code.

## FACTUAL AND PROCEDURAL BACKGROUND

On review of a judgment on the pleadings, we accept as true facts pleaded in the complaint and subject to judicial notice. (*Wise v. Pacific Gas & Electric Co.* (2005) 132 Cal.App.4th 725, 738 [34 Cal.Rptr.3d 222] (*Wise*).)[2] Because this appeal concerns the narrow issue of whether plaintiffs' causes of action are time-barred, a detailed recitation of the facts is not required. Suffice it to say that on December 15, 2003, the Director wrote to Doucet concerning its "recent submittal of the Site Plan, Pre-Expansion Elevations, Post-Expansion Elevations and Conceptual Landscaping Plan." That letter stated in pertinent part: "Initial staff review of the above-noted plans has been completed and it has been determined that [they] are in substantial conformance with the Spanos Park West Master Development Plan," subject to five minor listed "corrections."[3]

On February 17, 2004, City, through the Director, filed with the county clerk an NOE for the project. The NOE gave the location of the project as the "Northwest corner of Trinity Parkway and Consumes Drive, City of Stockton," stated that the project was located on approximately 22.38 acres within the A.G. Spanos Business Park Development, "a fully entitled master planned development governed by a Master Development Plan . . . adopted . . . on January 9, 2002," and described the project as "a retail use consistent with the Development Plan," to be built in two sequential phases, of approximately 138,272 and 68,888 square feet respectively. Announcing City's

[2] To the extent Spanos, Wal-Mart, and the trial court cite to the Supreme Court's opinion in *Stockton Citizens* for the facts in this case, such citation is improper. While courts are permitted to take judicial notice of the *existence* of that decision and the factual findings contained therein (Evid. Code, § 451, subd. (a)), they are not permitted to take judicial notice of the *truth* of such findings. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1568 [8 Cal.Rptr.2d 552]; see *Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 145–148 [14 Cal.Rptr.3d 109].) Moreover, "[e]xcept where the sufficiency of the evidence as a matter of law is involved [citation], the [law of the case] doctrine does not give any conclusive effect to determinations of questions of fact." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 465, p. 523; see *Moore v. Trott* (1912) 162 Cal. 268, 273 [122 P. 462] ["So well settled is the proposition that the doctrine of the law of the case, generally speaking, is applied only to the principles of law laid down by the court as applicable to a retrial of fact, that it does not embrace the facts themselves . . . that no quotation from the authorities is necessary . . . ."].)

[3] On our own motion, we take judicial notice of the Director's December 15, 2003, letter, which is part of the administrative record in this action. (Evid. Code, §§ 459, 452, subd. (d).) Plaintiffs' request for judicial notice of former section 16-193 of the Stockton Municipal Code (SMC) is granted. (Evid. Code, §§ 459, 452, subds. (b), (c).) Spanos's and Wal-Mart's requests for judicial notice of former sections 16-075 through 16-208 and section 16.212.070 of the SMC; pages 3-2 through 3-8, 6-16 through 6-17, and 8-1 through 8-3 of the master development plan (MDP); the NOE; and plaintiffs' counsel William D. Kopper's April 6, 2004, letter to the planning commission are granted. (Evid. Code, §§ 459, 452, subds. (b), (c), (d), (h).) Spanos's and Wal-Mart's requests for judicial notice of Stockton City Council Resolutions Nos. 02-0054 and 029-08 are denied as irrelevant.

finding of a CEQA exemption, the NOE declared that the Director, "as directed and authorized under the Spanos Park West Master Development Plan (MDP1-00), has determined that the Site Plan, Grading Plan, Landscape Plan, Building Elevations and Design applicable to the Project conform to the standards set forth in the Spanos Park West Master Development Plan, which determination is a ministerial action not subject to CEQA review . . . ."

On April 6, 2004, William D. Kopper, plaintiffs' attorney, wrote to City opposing the issuance of a use permit allowing the Wal-Mart Supercenter to sell alcoholic beverages.

On July 22, 2004, plaintiffs initiated the instant action by filing a verified petition for writ of mandate, alleging that City and real parties in interest had violated CEQA (first cause of action), planning and zoning laws (second cause of action) and California's Constitution (third cause of action). The petition also included derivative claims for injunctive (fourth cause of action) and declaratory relief (fifth cause of action).

City and real parties in interest demurred to the CEQA claims, and moved to strike them, on the ground they were untimely because the suit had not been commenced within 35 days after the filing of the NOE. (Pub. Resources Code, § 21167, subd. (d).)[4] The trial court overruled the demurrer and denied the motion to strike, finding that the resolution of the CEQA limitations issue depended on whether the Director's December 15, 2003, letter to Doucet constituted City's "approval" of the project, an issue that could not be decided on the face of the pleadings.

Ultimately, the trial court rejected the statute of limitations defense on the merits and issued a peremptory writ of mandate, ordering City to set aside all approvals and permits for the Wal-Mart Supercenter project, and to prepare a new environmental impact report addressing the project's environmental implications. On the limitations issue, the trial court reasoned that City's filing of the NOE could start the running of the 35-day limitations period only if the NOE gave notice that City had "approv[ed]" a project it deemed to be exempt from CEQA. The court determined the Director's December 15, 2003, letter, upon which the NOE was based, was not such an "approval"

---

[4] Section 21167, subdivision (d), of the Public Resources Code provides: "An action or proceeding alleging that a public agency has improperly determined that a project is not subject to this division pursuant to subdivision (b) of Section 21080 or Section 21172 shall be commenced within 35 days from the date of the filing by the public agency, or person specified in subdivision (b) or (c) of Section 21065, of the notice authorized by subdivision (b) of Section 21108 or subdivision (b) of Section 21152. If the notice has not been filed, the action or proceeding shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project."

because it was entitled " 'Status Report,' " it was only a letter, "not a formal order of approval," it included five conditions that required further action by the applicant, and it found that the submitted proposal was only in "substantial" compliance with the MDP. Thus, the court concluded, plaintiffs had 180 days to file suit, and their action was thus timely.

Spanos and Wal-Mart appealed, again asserting the CEQA claims were untimely under the 35-day limitations period set forth in Public Resources Code, section 21167, subdivision (d). We affirmed the trial court's decision but the Supreme Court granted review and reversed (*Stockton Citizens, supra,* 48 Cal.4th at p. 489). The court rejected the notion that unless the agency has validly approved a project, its filing of an NOE—the triggering event for the 35-day limitations period—has no force or effect and cannot cause the 35-day limitations period to begin to run. (*Id.* at p. 504.) Rather, the court held that "persons seeking to challenge an agency decision on CEQA grounds may not, for purposes of the statute of limitations, go behind the agency's declaration in an NOE that it *has* approved a project. Instead, they must bring their action within 35 days after the NOE is filed and posted." (*Id.* at p. 501, fn. 10.) The court found that "the Director's letter of December 15, 2003, represented City's final decision, correct or mistaken, that the Wal-Mart construction project could go forward. Unless a timely legal challenge to this decision was successful on the merits, nothing further was required to allow the construction process to commence." (*Id.* at p. 510.) The court further observed that the NOE complied with CEQA's requirements and provided petitioners with adequate notice of City's approval of the project to trigger CEQA's 35-day statute of limitations. (48 Cal.4th at p. 515.) The court also determined that the NOE provided plaintiffs adequate inquiry notice of the Director's approval to trigger their duty to investigate the potential for other grounds for challenging that approval. (*Id.* at p. 514.) The court declined to address the timeliness of the remaining causes of action, noting that although City and real parties in interest "argued below that the suit was also barred by the limitations period set forth in Government Code section 65009, subdivision (c) . . . [,] [n]either the trial court nor the Court of Appeal ruled on this issue, and we express no opinion upon it." (*Id.* at p. 515, fn. 16.)

Following remand of the case to the trial court, Spanos and Wal-Mart jointly filed a motion for judgment on the pleadings, arguing, among other things, that plaintiffs' non-CEQA causes of action were barred by section 65009, subdivision (c)(1)(E), because the suit was not commenced within 90 days after City's approval of the project. The trial court granted the motion and dismissed the action. In doing so, the court noted that "[a]lthough the Supreme Court decision [in *Stockton Citizens*] focused on CEQA issues, the Court's statements [therein] made clear that the project was finally approved on December 15, 2003."

## DISCUSSION

Plaintiffs contend the Director's December 15, 2003, "Letter Approval did not trigger the 90-day statute of limitations" set forth in section 65009, subdivision (c)(1)(E), because "it is not a permit issued after a [decision by a] legislative body of the City." Accordingly, they assert the trial court erred in concluding their claims were untimely and in entering judgment on the pleadings. We disagree.

Like a general demurrer, a motion for judgment on the pleadings tests the sufficiency of the complaint to state a cause of action. (*Wise, supra*, 132 Cal.App.4th at p. 738.) "The court must assume the truth of all factual allegations in the complaint, along with matters subject to judicial notice." (*Ibid.*) We review judgments on the pleadings de novo. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166 [59 Cal.Rptr.3d 142, 158 P.3d 718].)

Whether plaintiffs' remaining causes of action are time-barred requires an interpretation of section 65009 and the statutes referenced therein. "In construing a statute '[courts] begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' " (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) "[W]here the language [of the statute] is clear, its plain meaning should be followed." (*Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) "The determination of the statute of limitations applicable to a cause of action is a question of law we review independently." (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164 [71 Cal.Rptr.3d 109].)

"Section 65009 is located in division 1 (Planning and Zoning) of title 7 (Planning and Land Use) of the Government Code. It is intended ' "to provide certainty for property owners and local governments regarding decisions made pursuant to this division" (§ 65009, subd. (a)(3)) and thus to alleviate the "chilling effect on the confidence with which property owners and local governments can proceed with projects" (*id.*, subd. (a)(2)) created by potential legal challenges to local planning and zoning decisions.' [Citation.] [¶] To this end, Government Code section 65009, subdivision (c) establishes a short, 90-day statute of limitations, applicable to both the filing and service of challenges to a broad range of local zoning and planning decisions. [Citation.] . . . After expiration of the limitations period, 'all persons are barred from any further action or proceeding.' (§ 65009, subd. (e); [citation].)" (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 526 [25 Cal.Rptr.3d 649].)

As relevant here, section 65009, subdivision (c)(1), provides: "Except as provided in subdivision (d),[5] no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced . . . within 90 days after the legislative body's decision: [¶] . . . [¶] (E) To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the·reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit."

Plaintiffs first claim the Director's letter of approval did not commence the 90-day limitations period because it "is not a 'variance, conditional use permit, or any other permit.'" Plaintiffs' assertion ignores the express language of section 65009, subdivision (c)(1)(E), which states that the 90-day limitations period applies to actions or proceedings "[t]o attack, review, set aside, void, or annul *any decision on the matters listed in Sections 65901 and 65903*, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." (§ 65009, subd. (c)(1)(E), italics added.) Section 65901, which enumerates the powers of the board of zoning adjustment or zoning administrator, states in pertinent part: "The board of zoning adjustment or zoning administrator shall hear and decide applications for conditional uses or other permits when the zoning ordinance provides therefor and establishes criteria for determining those matters, and applications for variances from the terms of the zoning ordinance. *The board of zoning adjustment or the zoning administrator may also exercise any other powers granted by local ordinance . . . .*" (§ 65901, subd. (a), italics added.)

There is no question the Director is City's zoning administrator. Pursuant to section 65900, "[t]he legislative body of a city or county may, by ordinance, create and establish either a board of zoning adjustment, or the office of zoning administrator or both." Here, the Stockton City Council, by local ordinance, created the office of Community Development Department Director and vested him or her with the authority to review development projects "in compliance with" section 65901. (SMC, § 16.212.070, subd. (B)(8).)

---

[5] Subdivision (d) of section 65009 extends the limitations period to one year for certain actions brought in support of affordable housing developments. We directed the parties to submit supplemental letter briefs addressing whether plaintiffs' non-CEQA claims are subject to that one-year statute of limitations. Both sides responded that the non-CEQA claims are not subject to the extended statute of limitations because the action is not for the purpose of encouraging or supporting affordable housing or pursuant to one of the land use planning statutes included in section 65009, subdivision (d)(2).

There is also no question the Director was exercising "powers granted by local ordinance" when he approved the construction of the Wal-Mart Supercenter. The Stockton City Council, by local ordinance, vested the Director with the authority to: (1) "authorize minor changes to a Master Development Plan as provided in the Master Development Plan"; (2) "interpret the precise language of the Master Development Plan to determine if a proposed use, while not specifically listed as an allowable use, would be consistent with and share the same or similar characteristics of an allowed use identified in the adopted Master Development Plan"; and (3) "approve an implementing Site Plan Review that is consistent with the adopted Master Development Plan." (SMC, former § 16-208, subds. (B), (C), (F)(2);[6] see *Stockton Citizens, supra,* 48 Cal.4th at p. 506 ["the Director acted under the *ostensible* authority of the zoning ordinance and the MDP. He invoked those provisions . . . that *did*

---

[6] SMC, former section 16-208, part of City's Planning and Zoning Code, set forth "POST APPROVAL PROCEDURES" and provides in pertinent part: "The following procedures shall apply after approval of a Master Development Plan: [¶] . . . [¶] B. Changes to a Master Development Plan. Development of a Master Development Plan shall be established only as approved by the City Council and subject to any conditions of approval, except where changes to the project are approved utilizing the same procedure used to approve the original Master Development Plan. In addition, the Community Development Director may authorize minor changes to a Master Development Plan as provided in the Master Development Plan. [¶] C. Interpretation. The Community Development Director shall have the authority to interpret the precise language of the Master Development Plan to determine if a proposed use, while not specifically listed as an allowable use, would be consistent with and share the same or similar characteristics of an allowed use identified in the adopted Master Development Plan. [¶] . . . [¶] F. Site Plan Review [¶] 1. Applicability. A Site Plan Review shall be required to implement all or any portion of an adopted Master Development Plan, except for those uses that require another type of discretionary permit (e.g., Use Permit, etc.) identified in the adopted Master Development Plan. [¶] 2. Authority. The Community Development Director shall have the authority to approve an implementing Site Plan Review that is consistent with the adopted Master Development Plan." As relevant here, the MDP generally provides that "[o]nce the EIR is certified, the General Plan amended, the property re-zoned consistent with the General Plan as amended, the tentative subdivision map approved, the Master Development Plan adopted by City Council resolution and the corresponding Development Agreement adopted by City Council Ordinance, future development in the Plan Area shall be subject to review and approval [by] (1) the Design Review Board, and (2) the Community Development Director for consistency with the Land Uses and Development Standards of this Master Development Plan." With respect to amendments to the "Land Uses and Development Standards," the MDP provides that such amendments "can be separated into two classes[:] (1) Minor Amendments, i.e. amendments that the Community Development Director finds are consistent with the intent and purpose of A.G. Spanos Business Park Master Development Plan; and (2) Major Amendments, i.e. a request for an alternative project or use that the Community Development Director finds is not presently included as an alternative project or use within the Master Development Plan and is a project or use which is inconsistent with and does not share the same or similar characteristics of an allowed use identified within the Master Development Plan." Minor amendments are not subject to public hearings. Persons dissatisfied with any decision of the Director may appeal such decision to the planning commission by filing a written notice of appeal within 10 days of the decision.

allow him to issue 'ministerial' project approvals-approvals that substantially conformed to the MDP . . . ."].)

Contrary to plaintiffs' assertion, neither *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312 [118 Cal.Rptr.3d 915] (*County of Sonoma*) nor *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 [16 Cal.Rptr.3d 404, 94 P.3d 538] (*Travis*) hold that section 65009, subdivision (c)(1)(E), is limited to challenges concerning "agency action on variances and permits." In *County of Sonoma*, the court stated, "The case before us does *not* involve 'any decision on the matters listed in Sections 65901 and 65903 . . . .' (§ 65009, subd. (c)(1)(E).) Section 65901 concerns decisions by boards of zoning adjustment or zoning administrators on applications for permits or variances." (*County of Sonoma, supra*, 190 Cal.App.4th at p. 1320, fn. 6, italics added.) Because section 65901's scope was not before the court in *County of Sonoma*, plaintiffs' reliance on that case for the proposition that section 65901 is limited to actions on variances and permits is misplaced. (See *People v. Johnson* (2012) 53 Cal.4th 519, 528 [136 Cal.Rptr.3d 54, 267 P.3d 1125] [" ' "[C]ases are not authority for propositions not considered." ' "].) *Travis* involved an action to determine the validity of certain permit conditions, and likewise did not consider the scope of section 65901. (*Travis, supra*, 33 Cal.4th at p. 766.) Accordingly, the court's statement in a footnote that "Government Code sections 65901 and 65903 provide for hearing and decision on, and administrative appeals concerning, applications for variances, conditional use permits, and other permits" (*id.* at p. 766, fn. 2) cannot be interpreted as limiting the scope of those sections as urged by plaintiffs.

Plaintiffs also assert that the Director's letter of approval did not trigger the 90-day limitations period set forth in section 65009, subdivision (c)(1)(E), "because the statute is only applicable to the decisions of a legislative body." Because the Director is not a legislative body, plaintiffs contend his letter could not commence the limitations period. To support their position, plaintiffs rely on the introductory language set forth in subdivision (c)(1) of section 65009, which provides that "no action or proceeding shall be maintained *in any of the following cases* [(listed in subd. (c)(1)(A) through (F))] by any person unless the action or proceeding is commenced . . . within 90 days after *the legislative body's decision.*" (Italics added.) Subdivision (c)(1)(E) manifestly is one "of the following cases" and hence the introductory clause explicitly incorporates it as subject to the 90-day requirement. As previously discussed, subdivision (c)(1)(E) applies to the matters listed in sections 65901 and 65903, which concern actions of the "board of zoning adjustment," "zoning administrator" (§ 65901), and "board of appeals" (§ 65903)—none of which constitute a "legislative body."

 "It is a settled principle of statutory construction that courts should 'strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous.' [Citations.] We harmonize statutory provisions, if possible, giving each provision full effect." (*In re C.H.* (2011) 53 Cal.4th 94, 103 [133 Cal.Rptr.3d 573, 264 P.3d 357].) Here, interpreting the phrase "legislative body" in section 65009, subdivision (c)(1), as encompassing the board of zoning adjustment, zoning administrator, and board of appeals referenced in sections 65901 and 65903 not only avoids rendering a portion of section 65009, subdivision (c)(1)(E), meaningless, it harmonizes the provisions of the statutes as a whole. It is also consistent with the Legislature's intent, as evidenced by the fact that sections 65900, 65901, and 65903, which predate the addition of subdivision (c)(1)(E) to section 65009, allow "the legislative body of a city" to create by ordinance "either a board of zoning adjustment, or the office of zoning administrator or both" (§ 65900) to, among other things, "exercise any . . . powers granted by local ordinance" (§ 65901, subd. (a)) and to create a "board of appeals" to "hear and determine appeals from the decisions of the board of zoning adjustment or the zoning administrator" (§ 65903). Obviously, the Legislature was aware of these prior enactments when it added subdivision (c)(1)(E) to section 65009, and we construe the meaning of the phrase "legislative body" in light of them and conclude that the Legislature intended that the exercise of the powers set forth in sections 65901 and 65903 by boards of zoning adjustment, zoning administrators, or boards of appeals constitute decisions by a legislative body within the meaning of section 65009, subdivision (c)(1)(E).

Moreover, when considered as a whole, the language of section 65009, subdivision (c)(1), supports a finding that the Legislature intended to include decisions by zoning administrators in the 90-day limitations period. Subdivision (c)(1) provides that "no action or proceeding shall be maintained *in any of the following* cases by any person unless the action or proceeding is commenced . . . within 90 days after the legislative body's decision" (italics added), and thereafter specifies six cases to which the limitations period applies (§ 65009, subd. (c)(1)(A)–(E)). Three of those cases begin with the phrase "[t]o attack, review, set aside, void, or annul the decision of a *legislative body*" (*id.*, subd. (c)(1)(A), (B), & (D), italics added), and three do not, including subdivision (c)(1)(E) (*id.*, subd. (c)(1)(C), (E), & (F) [although subd. (c)(1)(C) involves a legislative decision]).[7] Rather, subdivision (c)(1)(E)

---

[7] Subdivision (c)(1) of section 65009 provides in its entirety:

"Except as provided in subdivision (d), no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision:

"(A) To attack, review, set aside, void, or annul the *decision of a legislative body* to adopt or amend a general or specific plan. This paragraph does not apply where an action is brought

begins with the phrase: "To attack, review, set aside, void, or annul *any* decision on the matters listed in Sections 65901 and 65903 . . . ." (§ 65009, subd. (c)(1)(E), italics added.) The Legislature's failure to limit subdivision (c)(1)(E) to decisions of a legislative body on the matters listed in sections 65901 and 65903, while doing so elsewhere, supports the conclusion that the Legislature did not intend to exclude decisions by zoning administrators from section 65009, subdivision (c)(1)(E).[8]

■ Construing section 65009, subdivision (c)(1)(E), as including decisions by zoning administrators also is consistent with the well-established rule of construction that a specific provision prevails over a general one relating to the same subject where the two provisions cannot be reconciled, which arguably is the case here. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (1999) 71 Cal. App.4th 1518, 1524 [84 Cal.Rptr.2d 621].) While section 65009, subdivision (c)(1), generally provides that the 90-day limitations period applies to decisions of legislative bodies, subdivision (c)(1)(E) includes "any decision" on the matters listed in section 65901, which in turn includes a zoning administrator's exercise of any powers granted by local ordinance. If section 65009, subdivision (c)(1)(E), is construed to exclude decisions by zoning administrators, then the portion of that subdivision incorporating section 65901 becomes meaningless.

---

based upon the complete absence of a general plan or a mandatory element thereof, but does apply to an action attacking a general plan or mandatory element thereof on the basis that it is inadequate.

"(B) To attack, review, set aside, void, or annul the *decision of a legislative body* to adopt or amend a zoning ordinance.

"(C) To determine the reasonableness, legality, or validity of *any decision* to adopt or amend any regulation attached to a specific plan.

"(D) To attack, review, set aside, void, or annul the *decision of a legislative body* to adopt, amend, or modify a development agreement. An action or proceeding to attack, review, set aside, void, or annul the decisions of a legislative body to adopt, amend, or modify a development agreement shall only extend to the specific portion of the development agreement that is the subject of the adoption, amendment, or modification. This paragraph applies to development agreements, amendments, and modifications adopted on or after January 1, 1996.

"(E) To attack, review, set aside, void, or annul *any decision* on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit.

"(F) Concerning any of the proceedings, acts, or determinations taken, done, or made prior to *any of the decisions* listed in subparagraphs (A), (B), (C), (D), and (E)." (Italics added.)

[8] Subdivision (c)(1)(E) was added to section 65009 in 1996 as subdivision (c)(5). (Stats. 1996, ch. 799, § 2, p. 4207.) Before that, subdivision (c)(1) through (4) (now subd. (c)(1)(A) through (D)) were consistent in referring to legislative bodies or their actions. It was the addition of subdivision (c)(5) (now subd. (c)(1)(E)) in 1996, without harmonizing it with the legislative body language of subdivision (c)(1), that created the current problem. However, subdivision (c)(1)(E) is referred to as a "case" to which the 90-day limitations period applies and that makes the limitations period applicable regardless of subdivision (c)(1)'s reference to a legislative body. That is the only way to give subdivision (c)(1)(E) meaning.

 Our decision in *People ex rel. Brown v. Tehama County Bd. of Supervisors* (2007) 149 Cal.App.4th 422 [56 Cal.Rptr.3d 558], cited by plaintiffs, does not dictate a contrary result. In that case, we held that the 90-day limitations period set forth in section 66499.37, which applies to " '[a]ny action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision,' " did not apply where the party that was attempting to rely on the statute of limitations failed to show that the county's planning director qualified as " 'an advisory agency, appeal board[,] or legislative body' within the meaning of the statute." (149 Cal.App.4th at p. 431.) Unlike that case, however, the statute in question here, section 65009, incorporates "matters listed in [section] 65901," which includes (in § 65901, subd. (a)) a zoning administrator's exercise of any power granted by local ordinance.

 Finally, plaintiffs argue that "[a]pplication of Government Code § 65009(c)(1)(E) requires a public procedure and an opportunity for a hearing." Plaintiffs assert that such a requirement is "implied" in section 65009; however, as Spanos and Wal-Mart point out, plaintiffs' assertion is refuted by the statute's express language. Section 65009, subdivision (c)(1)(E), specifically applies to "[t]he matters listed in [section] 65901," and that section distinguishes cases involving the authority to "hear and decide" applications for conditional uses or other permits from the "exercise [of] any other powers granted by local ordinance." (§ 65901, subd. (a).) Moreover, section 65901 expressly authorizes local jurisdictions to allow the grant of certain variances *"without a public hearing."* (§ 65901, subd. (b), italics added.)

*County of Sonoma, supra*, 190 Cal.App.4th 1312, cited by plaintiffs, does not hold otherwise. Unlike the present case, that case involved a facial challenge to an ordinance, and thus, fell within section 65009, subdivision (c)(1)(B), not section 65009, subdivision (c)(1)(E). (190 Cal.App.4th at pp. 1325–1326.) Accordingly, the 90-day statute of limitations began to run on the effective date of the ordinance. (*Id.* at pp. 1326–1327.) There, the court rejected the notion that the action was timely because it was brought within 90 days of the issuance of a stop order, explaining that "because 'there was no administrative adjudicatory decision related to [the plaintiff's] claims,' the limitations period cannot have commenced on any date other than the effective date of the Ordinance." (*Ibid.*) Relying on this language, plaintiffs assert that the Director's December 15, 2003, letter of approval could not have commenced the limitations period because it was not a final administrative adjudicatory decision. A stop order, however, is different from the Director's letter of approval.

Of particular relevance here is our Supreme Court's holding in *Travis*, cited by the court in *County of Sonoma*: "*Travis* involved a challenge by three property owners to a county ordinance imposing restrictions on second dwelling units on residential property. (33 Cal.4th at pp. 762, 764.) One owner, Travis, applied for and was granted a permit to construct a second dwelling unit on his property subject to conditions imposed under the ordinance in question. (*Id.* at p. 764.) He filed an administrative appeal against the permit conditions, which the county planning director denied on June 21, 1999. The other owners, the Sokolows, also sought and received a second unit permit containing certain restrictions. They received their permit on October 12, 1998, but did not pursue an administrative appeal. (*Ibid.*) [¶] All three owners filed a petition for writ of mandate on September 7, 1999, alleging, inter alia, that the county's ordinance was preempted by state statute and violated the federal Constitution. (*Travis, supra*, 33 Cal.4th at p. 764.) Addressing the timeliness of plaintiffs' action, the Supreme Court first characterized the suit as one to ' "determine the . . . validity" of conditions imposed on their permits and to "void, or annul" the decisions imposing those conditions.' (*Id.* at p. 766, quoting § 65009, subd. (c)(1)(E).) The nature of the action thus meant it was subject to the 90-day statute of limitations in section 65009, subdivision (c)(1)(E). (33 Cal.4th at pp. 766–767.) Accordingly, the Supreme Court held Travis's action timely as to his challenges to the validity of conditions imposed on his permit, since it had been brought within 90 days of 'final administrative action' on that permit. (*Id.* at p. 767.) In contrast, the Sokolows' challenge to their permit conditions was untimely, since it 'was brought almost 11 months after the Sokolows' permit application was approved.' (*Ibid.*)" (*County of Sonoma, supra*, 190 Cal.App.4th at p. 1328.) In other words, in the absence of an appeal, the limitations period begins to run on the date of the approval.

■ Here, our Supreme Court has already determined that the Director approved the project on December 15, 2003. (*Stockton Citizens, supra*, 48 Cal.4th at p. 510 ["the Director's letter of December 15, 2003, represented City's final decision, correct or mistaken, that the Wal-Mart construction project could go forward"].) The court's construction of that letter is obviously a question of law to which the doctrine of law of the case applies. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 466, p. 524; see *James v. The E. G. Lyons Co.* (1905) 147 Cal. 69, 75 [81 P. 275]; *Katemis v. Westerlind* (1956) 142 Cal.App.2d 799, 806 [299 P.2d 383].) Plaintiffs commenced this action on July 22, 2004, well beyond the 90-day limitations period set forth in section 65009, subdivision (c)(1). Because plaintiffs' second cause of action for planning and zoning violations seeks "[t]o attack, review, set aside, void, or annul" the Director's approval of the project, which, as previously discussed, is "[a] decision on [a] [matter] listed in [Section] 65901" (§ 65009,

subd. (c)(1)(E)), that cause of action is subject to the 90-day limitations period. Accordingly, the trial court properly determined the second cause of action is time-barred.[9]

To the extent plaintiffs assert they were prevented from appealing the Director's decision to the planning commission as provided for in the MDP because the decision was made in secret, that fact, even if true, had no impact on the commencement of the statute of limitations here. As our Supreme Court explained in *Stockton Citizens*: "[A]ssuming . . . a prior-notice requirement was implicit in the MDP's provision for a 10-day right of appeal to the planning commission, the omission of such notice would, at most, excuse exhaustion of this administrative remedy before filing a lawsuit. [Citation.] Failure to give such notice could not, in and of itself, prevent commencement of the 35-day limitations period for bringing such a suit once the NOE was filed." (*Stockton Citizens, supra*, 48 Cal.4th at p. 506.)

Moreover, plaintiffs do not contend the statute of limitations was tolled until they received constructive knowledge of the Director's approval; indeed, they argue it was not. Rather, they argue "the statute of limitations was never commenced by the Letter Approval because there was no compliance with administrative procedures and no administrative hearing." As detailed above, those arguments lack merit. In any event, we agree with the Supreme Court's observation that the NOE provided plaintiffs adequate inquiry notice of the Director's approval to trigger their duty to investigate the potential for other grounds for challenging that approval. (*Stockton Citizens, supra*, 48 Cal.4th at p. 514.)[10]

Turning to plaintiffs' remaining causes of action, plaintiffs acknowledge their third cause of action (violation of the Cal. Const.) "is timely provided the second cause of action is within the statute of limitations." As previously discussed, the second cause of action is not within the applicable statute of limitations; thus, the third cause of action is barred. (See *Travis, supra*, 33 Cal.4th at pp. 767–768.) Plaintiffs' fourth and fifth causes of action for injunctive and declaratory relief, respectively, are derivative of their other

---

[9] To the extent plaintiffs assert that their second cause of action is nevertheless timely because a valid approval of the Wal-Mart Supercenter required a valid amendment to the density transfer agreement, and such an amendment is lacking here, this assertion was rejected by our Supreme Court in *Stockton Citizens, supra*, 48 Cal.4th at page 507, footnote 12 ("this is but another effort to claim that a *procedurally flawed* approval cannot trigger the CEQA statute of limitations. On the contrary, though the issues plaintiffs raise could be pursued in a timely lawsuit, they do not avoid the 35-day limitations period triggered by the NOE.").

[10] Because we conclude the Director's letter falls within section 65009, subdivision (c)(1)(E), because it represented a zoning administrator's exercise of powers granted by local ordinance, we need not address Spanos and Wal-Mart's contention that the letter is a permit.

claims. Because the other claims are barred, the fourth and fifth causes of action likewise fail. (See *Freeman v. City of Beverly Hills* (1994) 27 Cal.App.4th 892, 897 [32 Cal.Rptr.2d 731].)

## DISPOSITION

The judgment is affirmed. Spanos and Wal-Mart shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Hull, J., and Duarte, J., concurred.