Filed 11/12/25  Wrightsman v. City of Gardena CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARIYA WRIGHTSMAN, | B344781 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 23STCP04453 |
| CITY OF GARDENA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joel L. Lofton, Judge. Affirmed.

Law Office of Paul Cass and Paul Cass for Plaintiff and Appellant.

Jones Mayer and Krista MacNevin Jee for Defendant and Respondent.

_____

Plaintiff and appellant Mariya Wrightsman is a property owner and former short-term rental (STR) host in Gardena. In 2023, defendant and respondent City of Gardena adopted two ordinances, No. 1854 (Ordinance 1854) and No. 1856 (Ordinance 1856)—the former of which banned STR's in the city.

Wrightsman opposed the ordinances. After their adoption, she petitioned the superior court for a writ of mandate (Code Civ. Proc., § 1085, subd. (a)) "to vacate, void, annul and declare [Ordinance 1854, and relevant parts of Ordinance 1856] unconstitutional and [violative] of California and federal law."

The trial court dismissed Wrightsman's first amended petition (FAP) on the city's demurrer. It found Wrightsman's challenges to Ordinance 1854 were barred by Government Code[1] section 65009 for failure to timely serve the city with a summons. It rejected a challenge to another action by the city related to voter approval requirements, on substantive grounds. And, it addressed no challenge to Ordinance 1856, observing Wrightsman's claims were about Ordinance 1854. Accordingly, the court entered a judgment of dismissal.

Finding no error, we affirm.

---

[1] Undesignated statutory references are to the Government Code.

## BACKGROUND

### I.  Facts

The City of Gardena is a general law city. The city's policymaking and legislative authority are vested in a five-member city council.

Wrightsman owns two different parcels of real property in Gardena. Each is designated "R-3 mixed-use," or medium density multifamily residential, under the city's zoning scheme.

Wrightsman's properties are improved by a total of six permanent residential units—two duplexes and two accessory dwelling units (ADU's). On each of the properties, she also parked a furnished travel trailer.

Wrightsman rented the residential units and trailers on a short-term basis—meaning less than a month at a time, generating hundreds of thousands of dollars in annual revenue.

In 2023, the city council proposed Ordinance 1854 to "regulat[e] home-sharing rentals and ban[] [STR's]." Wrightsman and two other STR proprietors objected. Wrightsman "rais[ed] objections during public hearings and submit[ted] written objections to the City at each public hearing." Nevertheless, the city council adopted Ordinance 1854 on September 12, 2023. By its terms, the ordinance's effective date was 31 days later—October 13, 2023.

The city council also proposed Ordinance 1856; Wrightsman objected to this one as well. On October 24, 2023, the city council enacted Ordinance 1856, "further amending the [city's] municipal code provisions related generally to [ADU's] with specific amendments to prior authorization to [*sic*] [STR's] at residential rentals."

## II. Procedural History

Wrightsman filed her initial petition for a writ of mandate against the city on December 11, 2023. However, she did not serve the city with the petition and summons until December 20, 2023.

Wrightsman filed the FAP on June 26, 2024. The FAP asserted several purported "legal grounds for peremptory issuance of a writ of mandamus" numerically under two subheadings: "A. Facial Challenge to Ordinances 1854 and 1856"; and "B. As-Applied Challenge to Ordinances 1854 and 1856." (Boldface & capitalization omitted.) We refer to these causes of action by the letter identifying their subheading and number. The gravamen of the FAP is that the city wrongfully deprived Wrightsman of the right to conduct her STR business by banning STR's at properties, like hers, zoned R-3. This was accomplished by way of amendments to the Gardena Municipal Code (GMC) section 18.16.040, effected by section 8 of Ordinance 1854.

The city filed a motion to strike portions of the FAP (not challenged on appeal) and a demurrer to the rest. The demurrer rested primarily on statute of limitations grounds but also addressed the substance of cause of action A.5., a challenge to the city's fee resolution for home sharing permits. The trial court granted the demurrer. It concluded all causes of action, save for A.5., were barred under the limitations period prescribed by section 65009, subdivision (c)(1)(B). It concluded cause of action A.5. failed on substantive grounds.

Wrightsman timely appealed.

4

## DISCUSSION

## I. Demurrer Standard and Standard of Review

" '[I]t is settled that the sufficiency of a petition in a mandamus proceeding can be tested by demurrer.' " (*Larson v. Redondo Beach* (1972) 27 Cal.App.3d 332, 338.)

A general demurrer "challenges the legal sufficiency of the factual allegations of a complaint or cause of action. [Citation.] . . . ' "[T]he absence of any allegation essential to a cause of action renders it vulnerable to a general demurrer. A ruling on a general demurrer is thus a method of deciding the merits of the cause of action on assumed facts without a trial." ' " (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 566.)

"The statute of limitations defense ' "may be asserted by general demurrer if the complaint shows on its face that the statute bars the action." ' " (*Mitchell v. State Dept. of Public Health* (2016) 1 Cal.App.5th 1000, 1007, mod. 2 Cal.App.5th 303f.)

"On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the petition states a cause of action as a matter of law." (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869.)

## II. Limitation of Issues on Appeal

We begin our analysis with the observation that the FAP purports to challenge both Ordinance 1854 and Ordinance 1856, but only asserts grounds for challenging Ordinance 1854.

As the trial court found, Wrightsman's entire action is based on the "claim that . . . Ordinance 1854 is unlawful." Ordinance 1854 is the one that makes STR's illegal in the city

5

and it is the loss of her STR business that Wrightsman claims as harm. Nowhere in the FAP does she assert any harm suffered as a result of Ordinance 1856, or explain how Ordinance 1856 is unlawful. Indeed, she barely describes what Ordinance 1856 is.

Likewise, nowhere in her appellate briefing does Wrightsman identify any challenge in the FAP to Ordinance 1856. She says the city failed to demur to her challenge to Ordinance 1856, but does not show error in the trial court's observation that her causes of action were based only on Ordinance 1854, leaving nothing about Ordinance 1856 for the city to address.

Similarly, Wrightsman does not contend on appeal that the trial court erred in dismissing cause of action A.5.

Accordingly, we focus exclusively on Wrightsman's causes of action based on Ordinance 1854, deeming all others abandoned. (See, e.g., *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 386.)

## III. Wrightsman's Challenges to Ordinance 1854 Are Barred by Section 65009

Section 65009 provides, in relevant part, that no person may maintain any action or proceeding "[t]o attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance" (*id.,* subd. (c)(1)(B) "unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision" (*id.,* subd. (c)(1)).

The trial court correctly concluded Wrightsman's causes of action challenging Ordinance 1854 are barred by section 65009 because Wrightsman failed to serve the city within 90 days of the

6

ordinance's adoption. Wrightsman advances several arguments against this result. We address them in turn.[2]

### A.    Wrightsman Challenges Only the Zoning Aspects of Ordinance 1854

Wrightsman asserts section 65009 has no application at all because Ordinance 1854 is not a zoning ordinance. We disagree.

Specifically, Wrightsman asserts that "[n]ot a single structural use was changed, no residential zone was changed to a commercial zone, no business to residential. Every physical structure in [the city] maintained the exact same zoning classification." She continues, "[t]he use of every single affected property has not changed. They are still residential. They can still be rented."

If it were true that "[t]he use of every single affected property [was] [un]changed," Wrightsman would not have any harm to complain about. But, of course, this is not true. Ordinance 1854 restricted the use of Wrightsman's properties and that restriction is the basis for her petition.

---

[2]    We note, as Wrightsman does, that the city failed to respond to many arguments made in her opening brief. However, Wrightsman is wrong that the city's failure amounts to a concession. (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 227, fn. 9 ["a respondent does not concede contentions asserted in an appellant's opening brief by failing to address them"].) Though we must consider whether those arguments Wrightsman raised in her opening brief show error, regardless of whether the city responded, we do not consider arguments Wrightsman raised for the first time on reply. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

The portion of Ordinance 1854 that restricted the use of Wrightsman's properties is the portion that amended title 18 of the GMC.

Title 18 of the GMC is known as "the 'zoning law of the city of Gardena.'" (GMC § 18.02.010.) Its purposes include the "encourage[ment], classif[ication], designat[ion], regulat[ion], restrict[ion], and segregat[ion] [of] the highest and best location and use of buildings and structures for residence, commerce, trade, . . . or other purposes in appropriate places; [the] provi[sion] for adequate off-street parking . . . ; and for such purposes to divide the city into zones of such number, shape and area as may be deemed best suited to carry out these regulations and provide for their enforcement." (GMC § 18.02.020.)

As relevant to Wrightsman, Ordinance 1854 amended the GMC to add "[s]hort term rentals" to the list of uses prohibited in properties, like hers, zoned R-3. Under Wrightsman's own definition, this is a " 'traditional zoning law' " inasmuch as it " 'involves the designation of property use in specific geographic zones . . . .' " (Quoting *Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 621.) Section 65009, subdivision (c)(1)(B) thus applies to Wrightsman's challenge to the ordinance.

That other elements of Ordinance 1854 made changes to nonzoning provisions of the GMC does not affect this conclusion. Wrightsman notes that Ordinance 1854 also added chapter 5.76 to title 5 of the GMC ("Business Licenses and Regulations"). Chapter 5.76 broadly governs home sharing, including defining what it is[3] and the requirements for obtaining a license to engage

---

[3]    The GMC defines " 'home sharing' " as "renting, for a period of thirty consecutive days or less, of one or more bedrooms in a

8

in it. (See GMC §§ 5.76.020, 5.76.030, 5.76.040, 5.76.060.) The only home sharing restriction in chapter 5.76 with which Wrightsman takes issue[4] is that " '[t]he host must reside onsite in a bedroom, within the home sharing rental, during the time in which guests are present.' " (GMC § 5.76.060.) While this restriction is contained in title 5, it is nevertheless a zoning restriction as it restricts the use of real property in a particular area. Title 18 specifies, without defining "home sharing," that "[h]ome sharing rentals" are permitted in R-1, or single family residential, zones "in accordance with Chapter 5.76." (GMC § 18.12.020, subd. J.) That the definition of such use is contained in a provision incorporated by reference, and not directly in title 18, does not change the fact that the definition animates title 18's restriction on land use within geographic zones and is therefore a zoning ordinance.

---

dwelling unit that is the primary residence of the host, while the host lives on site, in the dwelling unit, throughout the guest's stay." (GMC § 5.76.020.)

[4]    In the FAP's prayer for relief, Wrightsman asked the trial court "[t]o rescind and annul Ordinance 1854." But the grounds for such relief are necessarily found in, and limited to, those stated in the FAP. Contrary to Wrightsman's arguments on appeal, the city was not required to address those provisions as to which Wrightsman alleged no grounds for invalidity. (See *Lane v. Davis* (1959) 172 Cal.App.2d 302, 310 ["a statement in the prayer cannot bolster an otherwise insufficient pleading"]; *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1562 ["demurrer tests the sufficiency of the factual allegations of the complaint rather than the relief suggested in the prayer of the complaint"].)

Additionally, we fail to see how Wrightsman could possibly be "beneficially interested," within the meaning of Code of Civil Procedure section 1086, in the particularities of home sharing added to the GMC by Ordinance 1854, as GMC section 18.16.040 prohibits home sharing in R-3 properties. (See, e.g., *Nowlin v. Dept. of Motor Vehicles* (1997) 53 Cal.App.4th 1529, 1537 [drivers without social security numbers not beneficially interested in challenge to Veh. Code, § 1653.5 provisions pertaining thereto]; *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 797 [individual "neither seeking a psychology license, nor in danger of losing any license" not beneficially interested in challenge to change in psychologist licensing requirements].)

## B.     The City Did Not Waive Section 65009

Wrightsman contends the city waived section 65009 because it failed to make a separate motion under Code of Civil Procedure section 418.10. As best we can tell, her position is that the city's demurrer on statute of limitations grounds under section 65009 raises an " 'issue[] of . . . delay in prosecution' " (quoting § 418.10, subd. (e), boldface omitted), which the city waived by not filing a motion " '[t]o dismiss the action pursuant to the applicable provisions of Chapter 1.5 (commencing with Section 583.110) of Title 8' " (quoting *id.,* subd. (a)(3), boldface omitted).

We disregard this contention because it is unsupported by reasoned argument or authority. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 (*Ewald*) ["failure to provide legal authorities to support arguments forfeits contentions of error"].) Among other things, Wrightsman fails to identify what provision of Code of Civil Procedure part 2, title 8, chapter 1.5 the city should or could have moved under. While Code of Civil

10

Procedure section 583.250 *does* provide for dismissal for late service of process, it is limited to service made outside "the time prescribed in this article"—i.e., Code of Civil Procedure sections 583.210 through 583.250. The time prescribed by Government Code section 65009 is not within that article. Indeed, it is in a separate code. Thus, it is not apparent to us what basis exists for Wrightsman's contention.

### C. The Trial Court Properly Interpreted Section 65009 to Bar Wrightsman's Causes of Action

Having concluded Wrightsman's petition is a challenge to a zoning ordinance and that the city did not waive the time limitations of section 65009, we turn to Wrightsman's central argument: that 90 days after a "decision of a legislative body to adopt or amend a zoning ordinance" (§ 65009, subd. (c)(1)(B)) means 90 days after the *effective date* of the zoning ordinance. Her position is untenable.

Unless defined, words in statutes are accorded their plain and ordinary meanings. (*Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1237.) Wrightsman does not contend the city's adoption of Ordinance 1854 caused it to be effective. To the contrary, Wrightsman recognizes the date of legislative action and the effective date of a legislative enactment are separate concepts. Indeed, she concedes Ordinance 1854 was "adopted" on September 12, 2023, and had an effective date of October 13, 2023.

Ignoring section 65009's plain terms, Wrightsman directs us to case law suggesting the limitations period in section 65009, subdivision (c)(1) begins on the effective date of the legislation;

11

not the date of "the legislative body's decision." (§ 65009, subd. (c)(1).) Each case contains some statement to that effect, and each is traceable to our Supreme Court's description of section 65009 in *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 (*Hensler*): "If the challenge is to the facial validity of a land-use regulation, the statute of limitations runs from the date the statute becomes effective." (*Id.* at p. 22.)

This statement is dicta because it did not matter in *Hensler* whether the period ran from the enactment of the challenged ordinance or its effective date—the plaintiff filed his complaint "more than five years after the ordinance was enacted." (*Hensler*, *supra*, 8 Cal.4th at p. 24; see also *People v. Vang* (2011) 52 Cal.4th 1038, 1047, fn. 3 [dicta is a " 'judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)' "].)

Though Courts of Appeal do not disregard dicta of our Supreme Court "without a compelling reason" (*Mendoza v. Easton Gas Co.* (1988) 197 Cal.App.3d 781, 788), we "are not bound by [such dicta] where the court has not conducted a thorough analysis of the issues that reflects compelling logic" (*Merchandising Concept Group, Inc. v. California Unemployment Ins. Appeals Bd.* (2010) 181 Cal.App.4th 1274, 1282).

No "thorough analysis" of the issue took place in *Hensler*. Indeed, the *Hensler* decision only recites the year the challenged ordinance was "*adopted*" (*Hensler*, *supra*, 8 Cal.4th at p. 7, italics added)—without disclosing the date it became "effective," and later notes the limitations period had clearly run because the plaintiff brought his challenge "more than five years after the ordinance was *enacted*" (*id.* at p. 24, italics added). The *Hensler*

12

court's interchangeable use of "adoption," "date the statute becomes effective," and "enact[ment]" suggests it was not considering the distinctions between them as they were not germane in that case. (*Id.* at pp. 7, 22, 24.) Under these circumstances, we will not infer the *Hensler* court intended to rewrite section 65009, subdivision (c)(1) by its sole, unexplained, and apparently unconsidered reference to the "date the statute becomes effective." (See *Hensler*, at p. 22.)[5]

---

[5] Every other case Wrightsman cites relies, directly or indirectly, on *Hensler*'s unconsidered dicta, and would be unpersuasive on that basis alone. But they are also unpersuasive for other reasons. Only one, *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 (*Travis*), is a decision of the California Supreme Court. Though Wrightsman says (without a pin cite) that *Travis* "adopted" *Hensler*, this is not true. The *Travis* court concluded section 65009, subdivision (c)(1)(E), rather than (c)(1)(B), governed. (*Travis*, at p. 766.) The other cases are decisions of other Courts of Appeal, which do not bind us. (*Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, 1334, fn. 1.) Further, in none of these cases was *Hensler*'s characterization of section 65009, subdivision (c)(1)(B) necessarily dispositive. (See *Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1497 [§ 65009, subd. (c)(1)(E), not (c)(1)(B), governed]; *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 79 Cal.App.4th 242, 247 [action brought 293 days after effective date of challenged ordinance was necessarily barred regardless of *Hensler* dicta], limited on another ground in *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 250; *Buena Park Motel Assn. v. City of Buena Park* (2003) 109 Cal.App.4th 302, 307–308 [despite reciting *Hensler* dicta, action found barred because it was brought nearly four years after date ordinance "was adopted"]; *Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253, 259, 262, 264, 268 [though

Instead, we read the plain and unambiguous language of section 65009 exactly as the trial court did: The "legislative body's decision" that starts the 90-day clock for purposes of Wrightsman's petition is the "decision of [the city council] to adopt" the ordinance (*id.,* subd. (c)(1)(B)).[6] Because Wrightsman admittedly failed to serve the city with her petition until after the limitations period had expired, her challenge to Ordinance 1854 is time-barred.

On reply, Wrightsman argues this interpretation is contrary to Code of Civil Procedure section 312. Her reasoning is that no cause of action accrues with respect to a statute that is not yet effective, and section 312 provides that " '[c]ivil actions, without exception, can only be commenced . . . after the cause of action shall have accrued,' (CCP § 312) . . . ." (Boldface & italics omitted.) But Wrightsman omits relevant portions of section 312. Missing from her quotation are the words "unless where, in special cases, a different limitation is prescribed by statute." (*Ibid.*) Government Code section 65009 is one such statute.

---

action was brought within 90 days of effective date of amendment to ordinance, challenge was to a "2004 decision" on an unspecified date following a public vote].)

[6] As the statutory language is plain and unambiguous, we reject Wrightsman's bald characterization of the language as "vague" and her attendant efforts to impeach the language with evidence of purported legislative intent to say something different than what section 65009 says. (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1264 ["when statutory language is clear and unambiguous, resort to the legislative history is unwarranted"].)

### D. Wrightsman's Other Arguments Against the Application of Section 65009 Fail

#### 1. Purported Lack of Statutory Authority for Dismissal

Wrightsman contends "there can be no statute of limitations resulting in dismissal because there is no statutory authority to dismiss." (Boldface & capitalization omitted.) We disagree.

Our Supreme Court recognizes "section 65009 establishes a short statute of limitations, 90 days, applicable to actions challenging several types of local planning and zoning decisions . . . ." (*Travis*, *supra*, 33 Cal.4th at p. 765.) Failure to satisfy an applicable limitation period is a ground for demurrer and dismissal. (*Childs v. State of California* (1983) 144 Cal.App.3d 155, 161.) The special limitation period of section 65009 requires not just commencement of an action but service therein. (*Id.,* subd. (c)(1); cf. *Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 130 ["the 90-day service of summons requirement in [§] 66499.37 [containing substantially similar language to § 65009] is mandatory and operates as a statute of limitations"].) "[S]ection 65009 is an excellent example of how the Legislature shows its intention that failure to comply with a short service period shall result in an automatic dismissal of the action." (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1122; cf. *Sprague*, at p. 136 [affirming dismissal for failure to timely serve under § 66499.37]; *Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 746 [same].)

15

### 2. Purported Limitation to Adjudicative Decisions

Wrightsman also argues section 65009, subdivision (c)(1)(B) applies only to an "adjudicative decision." Without citation, she asserts "it is widely understood that the decision in this context refers to a legislative adjudicative decision . . . ." Elsewhere in her brief she quotes mention of adjudicative decisions in *Hensler*, *supra*, 8 Cal.4th at page 22 and *Tran v. County of Los Angeles* (2022) 74 Cal.App.5th 154, 169. But the former recognized section 66499.37 as supplying the limitations period for challenges to adjudicatory decisions and the latter neither mentioned section 65009 nor considered the timeliness of the petitioner's challenge at all.

Again, Wrightsman's argument ignores section 65009's plain language. Section 65009, subdivision (c)(1)(B) expressly applies to attacks on decisions of legislative bodies, like the city council "to adopt or amend a zoning ordinance." (*Ibid.*) This describes the action by the city Wrightsman challenges.

### 3. Purported Defect in Notice of Adoption

Wrightsman also asserts, without argument or authority, that the city's purported failure to publish an adequate summary of the ordinance after its adoption, as required by section 36933, subdivision (c)(1), precludes the city from asserting section 65009, subdivision (c)(1)(B) as a defense to her causes of action. This argument is forfeited. (*Ewald*, *supra*, 13 Cal.App.5th at p. 948.) In any event, the purported inadequacy in the city's published summary Wrightsman identifies is that it "did not include zoning." The actual notice reads: "Summary of Ordinance No. 1854 [¶] An ordinance of the City Council of the City of Gardena, California, amending Title 18 and adding Chapter 5.76

to Title 5 relating to home sharing rentals." (Boldface, capitalization & underscore omitted.) It further provides the full text of the ordinance may be found at the website provided. As "Title 18" is the city's zoning provision, it is not true that the summary does not include zoning. Thus, Wrightsman's argument, in addition to being forfeited, is not supported by the record.

### 4.    Retroactive Application

Finally, Wrightsman asserts the trial court's interpretation of section 65009 cannot apply retroactively to bar her causes of action because, "for over two decades, California courts—including the Supreme Court—have uniformly construed the [section] 65009 limitations period as running from the ordinance's effective date, not the date of adoption." (Boldface omitted.) She cites authority that retroactive application of a newly announced rule or standard is inappropriate where it was " 'unforeseeab[le] to counsel' " or results in the deprivation of a substantive right on " 'wholly new procedural grounds . . . .' " (Quoting *Estate of Propst* (1990) 50 Cal.3d 448, 463; *Penn v. Prestige Stations, Inc.* (2000) 83 Cal.App.4th 336, 343.)

Neither such circumstance exists here. First, section 65009, subdivision (c)(1)(B) is not "new[]" and could not be more clear or explicit. The triggering event for the limitations period is adoption. Second, as already discussed, the statement in *Hensler* was dicta. Moreover, Wrightsman's claim of "uniform[ity]" in judicial interpretations is wrong. At least one Court of Appeal decision squarely holds adoption is the triggering event for the period in which a challenge to a zoning ordinance may be brought. (See *Beresford Neighborhood Assn. v. City of San Mateo* (1989) 207 Cal.App.3d 1180, 1187.)

17

### 5. Wrightsman's Challenge Is Facial, Not As-applied

Near the end of her opening brief, Wrightsman reproduces a section of a motion she filed in the trial court, in which she asserts the city's enactment of Ordinance 1854 is an as-applied, rather than facial, challenge. An as-applied challenge is to the specific application of a facially valid statute in a particular circumstance. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 ["It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right."].) The time to bring an as-applied challenge runs from the date of the adjudicative administrative decision pertaining to the specific property. (*County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1327 (*Sonoma*).)

Here, Wrightsman admits she was not subject to an adjudicative administrative decision. Instead, she attacks the validity of Ordinance 1854 on its face, claims injury solely from the ordinance's enactment, and seeks its annulment. As she explains, the "decision" she challenges "related to a generally applicable law, not one aimed at a specific parcel, and thus the proceeding was not aimed to annul any decision, the express aim was to annul the ordinance." This is a facial challenge. (*Sonoma*, *supra*, 190 Cal.App.4th at p. 1326 [challenge was not as-applied because petition "asserted an injury arising solely from the Ordinance's enactment"].)

18

## IV. Wrightsman Fails to Show Ordinance 1854 Is Preempted

Wrightsman argues Ordinance 1854 is preempted by Civil Code section 827. Though this challenge to the ordinance is time-barred for the reasons already stated, we separately address it because Wrightsman argues it changes the statute of limitations because the Legislature made "material" amendments to section 827 *after* the ordinance became effective, which obligated the city to " 'bring its zoning code into compliance with later enacted state law.' " (Quoting *Travis*, *supra*, 33 Cal.4th at pp. 772–773.)

In addition to being presented in a way that is nearly incomprehensible, Wrightsman's preemption argument has no merit. She asserts Civil Code section 827 "explicitly clarifies that property owners have the right to rent for periods shorter than 30 days," which she claims "render[s] it preemptive" and deprives the city of "authority to enact [Ordinance] 1854."

Civil Code section 827 does no such thing. It merely sets forth the procedures for a landlord to modify the terms of a lease that is for less than one year. Nothing in the statute guarantees landlords the *right* to rent property on a short-term basis. It simply provides the procedure for changing the terms of such tenancies if they do.

Preemption occurs where the Legislature manifests the intent to fully occupy an area of law. (See *San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 792–793.) The Legislature may do so expressly or impliedly. (See *id.* at p. 792.) Wrightsman makes no claim it did so expressly here. The Legislature may fully occupy the field impliedly " 'in light of one of the following indicia of intent: "(1) the subject matter has been

19

so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality.'" (*Id.* at pp. 792–793, italics omitted.)

Wrightsman fails to grapple with these paradigms, much less show any is satisfied. The best she does is say Civil Code section 827 "clearly contemplated [tenancies] 'week to week, month to month, or other period[s] less than a month. . . .'" This is wholly inadequate to show preemption.

## DISPOSITION

The judgment is affirmed. The city is entitled to its costs on appeal.

RICHARDSON, J.

WE CONCUR:

LUI, P. J.

SIGGINS, J.*

---

\* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.