Filed 5/23/16  North Park Preservation Coalition v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NORTH PARK PRESERVATION COALITION, | D067927 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00062168-CU-TT-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent. | |
| JACK IN THE BOX, Inc., et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Reversed.

Briggs Law Corporation and Cory Jay Briggs, for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, Daniel F. Bamberg, Assistant City Attorney, Jana Mickova Will, Deputy City Attorney, for Defendant and Respondent.

Sheppard, Mullin, Richter & Hampton and Dana J. Dunwoody, Karin Dougan Vogel, Alejandro E. Moreno, for Real Parties in Interest and Respondents.

Plaintiff and appellant North Park Preservation Coalition (Coalition) appeals from a summary judgment in favor of defendant and respondent City of San Diego (City), and real parties in interest and respondents Jack in the Box, Inc. and John O. Thomas (real parties), on Coalition's first amended complaint in which it sought declaratory and injunctive relief in connection with the remodel of a Jack in the Box restaurant in San Diego's North Park neighborhood. Coalition alleged that City had violated provisions of the San Diego Municipal Code and the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) in part because City had not issued, and real parties had not obtained, a discretionary Neighborhood Development Permit (NDP). The trial court granted summary judgment, ruling Coalition's action was barred by the statute of limitations for Coalition's failure to file its complaint within 90 days of City's issuance of a May 2, 2013 building permit for the construction.

Coalition contends it raised disputed issues of material fact as to the scope of the May 2, 2013 permit, precluding application of the 90-day statute of limitations. Coalition further contends that its lawsuit focused on City's failure to issue an NDP based on construction activities that Coalition's members could only have discovered at the earliest in June 2013, making their August 12, 2013 complaint timely. Finally, Coalition contends City and real parties are estopped from asserting the statute of limitations based on assertedly misleading statements by real parties and City.

2

We conclude City did not meet its threshold summary judgment burden to demonstrate that Coalition's claims are barred by the statute of limitations. Given our conclusion, we need not decide whether Coalition's evidence raises a triable issue of material fact as to the trigger of the limitations period or as to whether City is equitably estopped from asserting the statute of limitations. We reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We state the undisputed facts from the parties' separate statements and the evidence supporting their moving and opposing papers, and view other facts in the light most favorable to Coalition as the party opposing summary judgment, resolving "evidentiary doubts or ambiguities in [Coalition's] favor." (Code Civ. Proc., § 437c, subd. (c); *County of San Diego v. Superior Court* (2015) 242 Cal.App.4th 460, 467.)[1]

---

[1] Much of the factual background is taken from Coalition's opposing summary judgment declarations, portions of which City objected to on hearsay grounds in its reply separate statement. On appeal, City does not dispute the statements made in those declarations for purposes of its motion but states they are "subject to City's standing objections . . . ." City, however, did not obtain a ruling from the trial court on those objections, nor does it reassert those objections on appeal with meaningful authority or argument. Where the trial court does not resolve evidentiary objections in connection with a summary judgment, they are preserved for appeal; we presume they have been overruled and the court considered the evidence in ruling on the merits of the motion. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) That rule, however, does not eliminate a party's obligation on appeal to demonstrate error in any evidentiary ruling; if a party seeks to challenge such rulings it has the burden to establish the court abused its discretion in so ruling. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852; see *Rickards v. United Parcel Service, Inc.* (2012) 206 Cal.App.4th 1523, 1526 & fn. 2 ["The trial court did not rule on the parties' evidentiary objections, but no one argues on appeal that any of the evidentiary objections should have been sustained"].) City's incorporation of objections by reference in its respondent's brief does not suffice. (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20 ["It is well settled that the Court of Appeal does not permit incorporation by reference of documents

Real parties are the owner and tenant of a Jack in the Box restaurant located on Upas Street in the North Park area of San Diego. Coalition is composed of members of the North Park community, who work collaboratively with other residents and businesses on issues relating to the preservation of the North Park community's character. Since as early as 2012, Coalition members Roger Lewis and Rick Pyles worked together concerning a proposed rebuild or remodel of the Upas Street Jack in the Box. In August 2012, the San Diego Planning Commission denied real parties' request for a planned development permit to demolish the existing structure and build a new restaurant.

On May 2, 2013, City issued a building permit for improvements to the Jack in the Box. On May 31, 2013, Jack in the Box construction manager Mike Hogenboom wrote to the North Park Planning Commission about Jack in the Box's plans to remodel the restaurant after the San Diego Planning Commission's denial of the planned development permit. In part, he explained that since August 2012, Jack in the Box had obtained permits for a remodel of the restaurant, and in accordance with attached plans and elevations, "[t]he location and size of the building are not changing. We are not demolishing any of the exterior walls." Both Lewis and Pyles received Hogenboom's letter the next day. Within a couple of weeks after receiving the letter, however, they discovered that Jack in the Box had begun to demolish the restaurant's exterior walls.

In June 2013, Lewis communicated with Linda Perine, a representative from the San Diego mayor's office, concerning the matter and within a few days, he and Pyles

filed in the trial court" or points and authorities contained in trial court papers, even if they are made a part of the appellate record]; *People ex rel. Dept. of Alcoholic Beverage Control v. Miller Brewing Co.* (2002) 104 Cal.App.4th 1189, 1200.)

noticed that work at the location had stopped. They also learned that City had issued a June 25, 2013 notice for corrective action, leading them to believe that Perine and the mayor had provided Coalition with the relief it sought.

In July 2013, Lewis and Pyles attended various meetings with Perine at which the restaurant was discussed and Perine suggested the mayor was working to remedy the situation. In particular, on July 3, 2013, they attended a meeting at City Hall in which they were given a copy of a legal request from City's Development Services Department to the city attorney stating in part, "The applicant is currently out of compliance with the issued permit due to the partial demolition of two walls that were not identified on the approved plans. Further inspections have been placed on hold pending a thorough review and approval of a construction change to the plans, which has been submitted by the applicant . . . . [¶] . . . [¶] Note that many members of the community have strongly voiced their opposition to the project. The applicant has shown a flagrant disregard for the welfare of the community and the integrity of the permitting process." The legal request asked the city attorney's office to determine, among other things, whether the ministerial permit's violation, and the fact Jack in the Box had misrepresented facts concerning the construction, constituted grounds for a stop work order and forfeiture of vested rights to continued operation of the project. Lewis and Pyles were told the mayor was being apprised of legal options for remedying the exterior demolition of the Jack in the Box restaurant beyond the scope of the May 2013 permit. A few days later, Lewis and Pyles were told the mayor had issued a press release stating he had "taken action to preserve the neighborhood character of North Park against potentially illegal new

5

development" relating to the Jack in the Box restaurant; the press release stated the restaurant "is undergoing a 'remodel,' but the developer has violated the conditions of their permit by destroying almost all of the existing restaurant."

On July 16, 2013, Perine reported on the status of City's investigation of the restaurant at a North Park Planning Commission meeting, telling Lewis and Pyles that the mayor was "in [the community's] corner" and that the best thing the community could do would be to support the mayor's efforts. She urged them to go on a public relations "blitz" on the mayor's behalf.

On July 29, 2013, City issued construction changes to the May 2, 2013 permit for changes "to interior and exterior partitions" the scope of which was "to include clarifications to which walls were demolished and reconstructed, exterior wall adjustments, and footing alterations."

The next day, Lewis, Pyles and others met with Perine at a restaurant, where she represented that the mayor would be taking definitive action in the next week or so on the community's behalf to remedy the situation and they would be very satisfied with the results, but that they needed a "plan of action" to ensure the outcome. Up to this point, Perine had repeatedly told them the mayor could resolve the problem based on his powers of office; she never told them to hire a lawyer or file a lawsuit, that the mayor might not follow through with what he planned to do, or that she was less than 100 percent confident that the mayor would follow through.

On August 1, 2013, Lewis and Pyles learned for the first time that the mayor was not going to take action on the North Park community's behalf with respect to the Jack in

6

the Box restaurant. Neither Lewis nor Pyles thought to hire a lawyer until early August 2013 because they initially relied on Hogenboom's letter, then Perine's representations that the mayor agreed with Coalition's concerns and would fix the problem administratively.

On August 12, 2013, Coalition filed a verified complaint against City and real parties for declaratory and injunctive relief, as well as a petition for writ of mandate. Coalition alleged it was challenging "recent demolition and new construction activities at the Jack in the Box restaurant . . . because the activities are being done without valid development and construction permits and because the activities include actions that have never been subjected to environmental review under [CEQA]." In particular, Coalition alleged that the Jack in the Box project, as reflected in a June 2013 project issues report, "did not propose an expansion of the existing building footprint" and that Jack in the Box's construction manager represented that it was not demolishing any of the exterior walls, but that all exterior walls of the structure were demolished, prompting the legal services request to the city attorney's office regarding the permit applicant's noncompliance. It alleged that in July 2013, Jack in the Box obtained City's approval of changes to the construction permits for the project, and that the "new construction contemplated by the Project" required an NDP under various provisions of the San Diego

7

Municipal Code (SDMC).[2] Coalition alleged that because no NDP had been issued for the project, its maintenance, use, and construction was illegal as contrary to SDMC section 126.0405. It also alleged the project's approval was illegal because it had not been subjected to environmental review under CEQA.

In October 2013, Coalition filed a verified first amended complaint again asserting causes of action for declaratory and injunctive relief, as well as a petition for writ of mandate. Coalition included new allegations that it did not know or have reason to know the facts constituting its cause of action until within the limitations period for filing suit, and that its lack of knowledge was caused by City's and real parties' efforts to purposely

---

[2] Coalition alleged: "Coalition does not have sufficient information at this time to allege one way or the other whether the new construction contemplated by the Project does 'not expand beyond the existing *structural envelope*" within the meaning of SDMC section 127.1014(b); whether the Project involves an 'expansion or enlargement of a *previously conforming structural envelope*" within the meaning of SDMC section 127.0106(b); or whether the Project involves a '*previously conforming structure*' at all. Consequently, Coalition alleges as follows in the alternative: [¶] A. If the new construction contemplated by the Project does 'not expand beyond the existing *structural envelope*' and the Project does involve a '*previously conforming structure*' within the meaning of SDMC section 127.0104(b), the Project requires a Neighborhood Development Permit because 'the cost of the new construction would be greater than 50 percent of the *market value* of the existing *structure*.' [¶] B. If the new construction contemplated by the Project involves an 'expansion or enlargement of a *previously conforming structural envelope*" and the Project does involve a '*previously conforming structure*' within the meaning of SDMC section 127.0106(b), the Project requires a Neighborhood Development Permit because 'the existing *previously conforming structure* does not comply with applicable zoning regulations as to *density* or use.' [¶] C. Even if the Project does not involve a '*previously conforming structure*,' the Project nevertheless requires a Neighborhood Development Permit because it involves "Reconstruction of a *structure* with *previously conforming* nonresidential uses' and the costs of the reconstruction 'would exceed 50 percent of the *market value*' within the meaning of SDMC section 126.0402(a)(2)." (Some capitalization omitted.)

8

mislead Coalition and its members about the extent of their activities. Coalition also added a cause of action for public nuisance against real parties.

City moved for summary judgment on grounds the first amended complaint was time-barred as a matter of law under SDMC section 121.0102 and Government Code section 65009, subdivision (c)(1), both setting forth a 90-day statute of limitations.[3] It argued that the premise of Coalition's complaint was that City had improperly issued a ministerial building permit, which did not require environmental review under CEQA, rather than an NDP, which triggered such review. City presented two undisputed material facts in support of its motion: that the building permit was issued on May 2, 2013, and Coalition's original complaint was filed on August 12, 2013, 102 days after the permit's issuance. As "evidence" supporting the first fact, City asserted: "All parties stipulated on the record at the [case management conference] on November 1, 2013, that the Building Permit was issued May 2, 2013." City also requested judicial notice of various municipal code sections and the cover page of Coalition's original complaint. It did not reference or attach to its request for judicial notice a copy of the stipulation or any order reflecting such a stipulation. City did not include a sworn declaration of counsel attesting to any such stipulation.

---

[3]     Real parties also moved for summary judgment and alternatively summary adjudication of issues on Coalition's cause of action for public nuisance, and joined in City's motion. They join in City's arguments on appeal. City did not join real parties' motion below, but even if it had, we would not consider real parties' evidence on the question of whether City met its initial summary judgment burden. (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 635-637; *Barak v. Quisenberry Law Firm* (2006) 135 Cal.App.4th 654, 661.)

9

Coalition opposed the motion, arguing it was procedurally and substantively defective. It maintained City had not met its initial burden to present competent evidence supporting its affirmative defense, in part because it had not included a copy of the May 2, 2013 permit. Coalition further pointed out it was suing over City's failure to issue, and real parties' failure to obtain, a discretionary NDP for its new construction, i.e., the demolition and rebuilding of the restaurant. Coalition argued the demolition triggering City's and real parties' obligations and forming the basis for its lawsuit was not discovered until June 2013, and thus even assuming a ministerial permit was issued on May 2, 2013, the statute of limitations commenced at the earliest on June 1, 2013, rendering timely its complaint filed 72 days later. Finally, Coalition argued City and real parties were estopped from asserting the statute of limitations in view of Coalition being misled by (1) Hogenboom's May 31, 2013 letter; (2) Perine's representations to Lewis and Pyles in July 2013; and (3) the mayor's press release indicating he "has taken action to preserve the neighborhood character of North Park against potentially illegal new development."

Coalition presented declarations from Lewis and Pyles reflecting their receipt of Hogenboom's letter, their observation of the demolition of exterior walls within a couple of weeks afterwards, their meetings and communications with Perine, and their discovery in August 2013 that the mayor would not be taking any action with regard to the restaurant. Both men stated that based on City's issuance of a notice of corrective action and their communications with Perine, they believed up until August 2013 that City was working earnestly and in good faith to resolve the Coalition's concerns. Coalition also

10

provided a declaration from its attorney, Mekaela Gladden, who appeared at the November 2013 status conference. Gladden averred that she did not recall making a stipulation about the facts of the case or the date that any particular permit issued. She referred to and attached a copy of the minutes from the November 2013 hearing, as well as several documents from the administrative record.

In reply, City attached to its points and authorities a copy of a *September* 2013 minute order reflecting that the "Parties stipulate that [the] building permit issued on 5/2/13 for all purposes including Demurrer." It also attached a copy of a permit approval for the Jack in the Box restaurant, which reflects an "issued" date of May 2, 2013 and "completed" date of September 11, 2013. That document states: "Scope: For extensive demolition of interior and exterior walls and roof structure, and construction of new roof structure, partition walls, restrooms, and associated mechanical, electrical and plumbing." City did not include a request for judicial notice with its reply papers.

The trial court granted summary judgment in City's and real parties' favor. Overruling Coalition's objections to City's evidence, it ruled Coalition's complaint was time-barred: that the parties had stipulated for all purposes that the building permit was issued on May 2, 2013, but Coalition did not file its action until 102 days later, on August 12, 2013. The court ruled that the scope of the building permit was " '[f]or extensive demolition of interior and exterior walls and roof structure, and construction of new roof structure, partition walls, restrooms, and associated mechanical, electrical and plumbing' " and that there was evidence that the only change to the plans was "minor," that is, the movement of a wall four inches to accommodate the roof trusses. It ruled the

11

evidence showed that the rest of the remodel was built in accordance with the originally approved plans. The court rejected Coalition's estoppel argument on grounds "none of the representations cited to by [Coalition] in support of its argument bears on the issue of its right to file suit," and Coalition failed to meet the required elements of estoppel, in part because there was no evidence Coalition advised City it was holding off on litigation based on City's representations or that City expected Coalition to refrain from filing litigation based on its representations.

Coalition appeals from the judgment.

## DISCUSSION

### I. *Standard of Review*

Summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc. § 437c, subd. (c).) " 'A defendant moving for summary judgment must show either (1) that one or more elements of the plaintiff's cause of action cannot be established, or (2) "that there is a *complete* defense to that cause of action." [Citation.] The burden on a defendant moving for summary judgment based upon the assertion of an affirmative defense is heavier than the burden to show one or more elements of the plaintiff's cause of action cannot be established. Instead of merely submitting evidence to negate a single element of the plaintiff's cause of action, or offering evidence such as vague or insufficient discovery responses that the plaintiff does not have evidence to create an issue of fact as to one or more elements of his or her case [citation], "the defendant has the initial burden to show that undisputed facts support *each*

12

*element* of the affirmative defense" [citations]. The defendant must demonstrate that under no hypothesis is there a material factual issue requiring trial. [Citation.] If the defendant does not meet this burden, the motion must be denied. Only if the defendant meets this burden does "the burden shift[ ] to plaintiff to show an issue of fact concerning at least one element of the defense." ' " (*Melendrez v. Ameron International Corporation* (2015) 240 Cal.App.4th 632, 637-638; see also *State Comp. Ins. Fund v. Superior Court* (2010) 184 Cal.App.4th 1124, 1132.)

The purpose of a summary judgment motion is " 'to identify those cases in which there is no factual issue which warrants the time and cost of factfinding by trial.' " (*Serri v. Santa Clara University*, *supra*, 226 Cal.App.4th at p. 859.) The object of the procedure is " 'to cut through the parties' pleadings' to determine whether trial is necessary to resolve their dispute." (*Ibid.*, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Consequently, in ruling on a summary judgment, the trial court must first identify the issues framed by the pleadings, since the pleadings set the boundaries of the issues to be resolved, and the materiality of disputed facts. (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1250; *Nativi v. Deutsche Bank National Trust Company* (2014) 223 Cal.App.4th 261, 289-290; *Serri v. Santa Clara University*, *supra*, 226 Cal.App.4th at p. 858.) The court then determines whether the moving party has established facts justifying judgment in its favor, and if the moving party has carried its initial burden, decide whether the opposing party has demonstrated the existence of a triable issue of material fact. (*Serri*, at p. 858.)

13

This court undertakes the same analysis as the trial court, reviewing the record de novo to determine if City is entitled to judgment as a matter of law on its statute of limitations defense. (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334; *Serri v. Santa Clara University*, *supra*, 226 Cal.App.4th at p. 858; *Falk v. Children's Hospital Los Angeles* (2015) 237 Cal.App.4th 1454, 1462.) In undertaking this review, "[w]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them." (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.) "[W]e view the evidence in a light favorable to [Coalition], liberally construing [Coalition's] evidentiary submission while strictly scrutinizing [City's] own showing and resolving any evidentiary doubts or ambiguities in [Coalition's] favor." (*Serri*, at pp. 858-859.)

II. *City Did Not Meet its Threshold Summary Judgment Burden*

A. *City Did Not Present Evidence Demonstrating it was Entitled to Judgment as a Matter of Law on Statute of Limitations Grounds*

Coalition contends City and real parties did not meet their initial burden to demonstrate the commencement of the statute of limitations; that the facts on which City's motion was based were not supported by competent evidence. It maintains in particular that there are disputed facts as to the scope of the permit issued on May 2, 2013, and whether it encompassed the demolition of the exterior walls. Coalition further contends the trial court erred and violated its right to due process by considering the September 13, 2013 minute order presented for the first time in City's reply papers, and by overruling Coalition's timely objection to that evidence.

14

Coalition's arguments have merit. Summary judgment law requires a defendant moving for summary judgment to "present evidence," and not "simply point out" the deficiencies in or absence of the plaintiff's evidence. (*Aguilar*, *supra*, 25 Cal.4th at pp. 854-855; see also *Interinsurance Exchange of Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1229.) In particular, a moving defendant "*must* 'support[ ]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' " (*Aguilar*, at p. 855; Code Civ. Proc., § 437c, subd. (b)(1) [each material fact in the separate statement "shall be followed by a reference to the supporting evidence"; failure to comply with this requirement "may in the court's discretion constitute a sufficient ground for denial of the motion"].) And, as we have stated, on a summary judgment, a moving defendant's papers are strictly construed; we are to resolve all doubts about the propriety of granting the motion in Coalition' favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; *Y.K.A. Industries v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 366, fn. 31.) We resolve evidentiary questions in the *opposing* party's favor, not the moving party's favor.

Under these principles, it was not enough for City to merely assert that the parties had previously entered into a stipulation, it was required to present *evidence*—counsel's declaration or a request for judicial notice of the "exact matter" in the court file (Code Civ. Proc., § 437c, subd. (b)(7)), for example—that they did so. "Summary judgment, although a very useful tool in litigation, is also a drastic remedy. Because of this, it is important that all of the procedural requirements for the granting of such a motion be

15

satisfied before the trial court grants the remedy." (*Magana Cathcart McCarthy v. CB Richard Ellis, Inc.* (2009) 174 Cal.App.4th 106, 117.)

Also fatal to City's motion is that City did not present key evidence—the contents and scope of the building permit assertedly issued on May 2, 2013—with its moving papers, depriving Coalition of an opportunity to respond to that evidence. Instead, City presented a copy of what it claimed to be the original permit (as well as the September 13, 2010 minute order reflecting the parties' stipulation) for the first time as an exhibit to its reply papers, and argued, also for the first time in reply, that the May 2, 2013 permit reflected the scope of authorized construction.

Even if we were to accept that the parties stipulated to the May 2, 2013 date of issuance, that stipulation was silent on the *scope and extent of the construction authorized and encompassed by that permit*. And, the evidence pertaining to the scope of construction authorized by City on May 2, 2013 is in dispute. Coalition presented evidence that in late May 2013, Jack in the Box's own construction manager represented that the scope of construction did not include demolition of exterior walls, and thereafter, City's Development Services Department advised the city attorney that real parties were out of compliance with the building permit due to the removal of exterior walls, prompting City's stop order and other enforcement steps in June and July 2013. Coalition's evidence shows City authorized changes to the original permit on July 29, 2013, including as to "exterior partitions," "clarifications to which walls were demolished and reconstructed" and "exterior wall adjustments." Coalition's evidence suggests, and a reasonable fact finder can infer, that the original permit did not encompass demolition or

16

movement of the exterior walls, but that those changes were authorized on July 29, 2013.[4] Thus, City's arguments as to the scope of construction authorized by the May 2, 2013 permit were not pure legal arguments based on undisputed facts, but constituted a disputed factual matter.

Consideration of this factual evidence presented first in City's reply papers would violate Coalition's due process rights. "[T]he evidence not only was omitted from the separate statement, it also was not filed until after [Coalition] had responded to the issues raised in the separate statement. . . . [Coalition] was not informed what issues it was to meet in order to oppose the motion. Where a remedy as drastic as summary judgment is involved, due process requires a party be fully advised of the issues to be addressed and be given adequate notice of what facts it must rebut in order to prevail." (*San Diego Watercrafts v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316; see also *Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 946.) For this reason, City did not sustain its initial burden on the motion to show it was entitled to judgment as a matter of law even under its own characterization of Coalition's theory, which depended on establishing that the statute of limitations was triggered on May 2, 2013, assertedly rendering untimely Coalition's complaint filed August 12, 2013.

---

4      Indeed, both versions of the May 2, 2013 permit in the record appear to have been generated *after* July 29, 2013. The permit attached to City's reply papers contains a date and time in the upper right hand corner reading: "9/12/13 12:30 pm." The copy of the May 2, 2013 permit that is in the administrative record and attached to City's respondent's brief on appeal contains a different date and time: "8/13/13 2:58 pm." Drawing all inferences in Coalition's favor, we read these date and time references as reflecting the scope of the permit as it existed at *those* times, *after* City approved the construction changes, not as of May 2, 2013.

17

B.  *City's Evidence Did Not Address Coalition's Challenge to City and Real Parties'*

*Noncompliance with the SDMC and CEQA*

There is an independent reason City did not establish it was entitled to judgment as a matter of law on Coalition's operative complaint.  City was required to direct its evidence to the issues raised by the pleadings.  (*Lona v. Citybank, N.A.* (2011) 202 Cal.App.4th 89, 100; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.)  In its motion, City asserted that Coalition's challenge was to the validity of the original May 2, 2013 permit.  But Coalition's theory was not that City's original permit was illegal or otherwise faulty, but that the later demolition of the restaurant's exterior walls and other construction changes made after the permit issued required City to issue and real parties to obtain an NDP, which would require environmental review.  Thus, the gravamen of Coalition's challenge was to City's decision to allow construction changes— which occurred at some point after real parties began to remove or move exterior walls— without also requiring real parties to obtain an NDP under City's municipal code.  City's evidence that the building permit was issued on May 2, 2013, was not directed to that issue.

As we explain below, because City's motion did not address Coalition's theory, City failed to carry its initial burden to demonstrate it was entitled to judgment as a matter of law on grounds Coalition's August 12, 2013 complaint was untimely as a matter of law under either limitations periods contained in SDMC section 121.0102 or Government Code section 65009.

1.  *SDMC section 121.0102*

18

SDMC section 121.0102 provides: "Any action or proceeding to challenge, review, or void any decision made in accordance with the Land Development Code shall commence no later than 90 calendar days after the date on which the decision becomes final. Thereafter; all persons are barred from taking any such action or invoking any defense of invalidity or unreasonableness of the decision."

We review this language de novo, ascertaining the intent of the legislative body and giving the language its usual and ordinary meaning. (*City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 78; *State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043.) If the language "is clear and unambiguous our inquiry ends. There is no need for judicial construction and a court may not indulge in it." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047.)

SDMC section 121.0102 plainly is not limited to decisions approving building permits, but broadly applies to "*any decision*" made in accordance with City's Land Development Code. (SDMC § 121.0102, emphasis added.) As we have pointed out, Coalition's challenge is not to City's original May 2, 2013 decision to issue real parties' building permit; it is to City's *later* approval of changes to the scope of real parties' construction without requiring real parties to obtain an NDP.[5] Coalition's complaint

---

5    We note that real parties presented evidence on which City relied in its reply papers that City's authorized changes to construction were "minor" (moving a wall four inches to accommodate roof trusses) and were required due to dry-rot. But Coalition's evidence—including the statements of City's Development Services Department director indicating real parties were out of compliance with the original permit due to the

19

indicates that City's decision was made at some point after May 31, 2013, when Jack in the Box represented that no exterior walls would be demolished pursuant to its plans, and resulted in City's July 29, 2013 approval of the construction changes. The August 12, 2013 complaint was filed within 90 days of either date, rendering summary judgment improper based on the limitations period set forth in SDMC section 121.1012.

2. *Government Code Section 65009*

Nor did City's evidence that the building permit originally issued on May 2, 2013 meet its burden to establish as a matter of law that Coalition's action is time-barred under Government Code section 65009, subdivision (c)(1)(E), as City argued below. City maintained below and repeats on appeal that the section applies to "any challenge attacking the validity of any permit" and it argues the circumstances of this case are governed by *Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484 (*Stockton Citizens*), which is "directly on point."

Government Code section 65009 "is intended ' "to provide certainty for property owners and local governments regarding decisions made pursuant to this division" ([Govt. Code,] § 65009, subd. (a)(3)) and thus to alleviate the "chilling effect on the confidence with which property owners and local governments can proceed with projects" (*id.,* subd. (a)(2)) created by potential legal challenges to local planning and zoning decisions.' [Citation.] [¶] To this end, Government Code section 65009, subdivision (c) establishes a short 90-day statute of limitations, applicable to both the

demolition of walls—raises a factual question on the minor or substantial nature of the scope of the construction changes in relation to the original permit.

20

filing and service of challenges to a broad range of local zoning and planning decisions. [Citation.] . . . After expiration of the limitations period, 'all persons are barred from any further action or proceeding.' " (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 526; see also *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 766.)

Government Code section 65009, subdivision (c)(1), provides: "Except as provided in subdivision (d) [relating to affordable housing developments], no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced . . . within 90 days after the legislative body's decision: [¶] . . . [¶] (E) To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." "Government Code sections 65901 and 65903 provide for hearing and decision on, and administrative appeals concerning, applications for variances, conditional use permits, and other permits." (*Travis v. County of Santa Cruz, supra*, 33 Cal.4th at p. 766, fn. 2.)[6] The limitations periods set out in the statute are triggered by specific acts of local

---

[6]    Government Code section 65901, subdivision (a) provides: "The board of zoning adjustment or zoning administrator shall hear and decide applications for conditional uses or other permits when the zoning ordinance provides therefor and establishes criteria for determining those matters, and applications for variances from the terms of the zoning ordinance. The board of zoning adjustment or the zoning administrator may also exercise any other powers granted by local ordinance, and may adopt all rules and procedures necessary or convenient for the conduct of the board's or administrator's business." Here, City states that its municipal code empowers designated staff to decide permits in accordance with the decisionmaking procedures of the Land Development Code.

21

land use planning authorities, and to pinpoint when the statute began to run, one must determine what specific acts Coalition sought to challenge. (*County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1324.) "To do so, courts examine the nature of the party's claims" the "true nature of [which] may be found by looking to the allegations of the pleadings and to the relief requested in the court below." (*Ibid*.; see also *Avenida San Juan Partnership v. City of San Clemente* (2011) 201 Cal.App.4th 1256, 1275.)

In *Stockton Citizens*, a plaintiff citizen group petitioned for a writ of mandate to direct a city and city council to vacate its approval of a Wal-Mart Supercenter. (*Stockton Citizens*, *supra*, 210 Cal.App.4th at p. 1487.) They claimed that the city's community development department director's December 2003 letter approving the project did not trigger the 90-day limitation period of Government Code section 65009, subdivision (c)(1)(E), in part because the letter was " 'not a permit issued after a [decision by a] legislative body of the City.' " (*Id*. at p. 1491.) The Court of Appeal rejected that argument. It observed the 90-day limitations period applied to actions to attack or review " '*any decision on the matters listed in Sections 65901 and 65903*,' " and in that case, "[t]here [was] no question" that the city's community development department director was its "zoning administrator," as the city council by local ordinance had vested him with the authority to review projects in compliance with Government Code section 65901, and also was exercising " 'powers granted by local ordinance ' " when he issued the

(SDMC, section 111.0205, subd. (c).)  We assume, without deciding, that this puts City's action within Government Code section 65901.

22

ministerial project approval. (*Stockton Citizens*, 210 Cal.App.4th at p. 1492.) In *Stockton Citizens*, the plaintiffs' cause of action for planning and zoning violations was unquestionably one to attack, review, set aside, void or annul the director's December 2003 approval of the Wal-Mart project. (*Id*. at pp. 1498-1499.) Because their action was filed in July 2004, it was time-barred. (*Id*. at p. 1499.)

City appears to concede by its comparison to *Stockton Citizens* that the nature of Coalition's action is one to "attack [or] review . . . any decision on the matters listed in Section 65901." (Govt. Code, § 65009, subd. (c)(1)(E).)[7] As *Stockton Citizens* pointed out, subdivision (c)(1)(E) "includes 'any decision' on the matters listed in section 65901, which in turn includes a zoning administrator's exercise of any powers granted by local ordinance." (*Stockton Citizens*, *supra*, 210 Cal.App.4th at p. 1496.) Accepting City's argument that City staff acted in this capacity, we have already concluded that the pertinent decision challenged by Coalition is City's approval of construction changes that Coalition asserts required issuance of an NDP. The 90-day limitation period did not begin to run until that decision was made at some point after May 31, 2013, or on July 29, 2013. Either way, Coalition's August 12, 2013 action was filed within the 90-day statute of limitations.

Because City did not show it is entitled to judgment as a matter of law on its affirmative defense, it cannot prevail on summary judgment. We need not consider

---

7    Coalition is not challenging the " 'legality[] or validity of any *condition* attached to a variance, conditional use permit or any other permit.' " (See *County of Sonoma v. Superior Court*, *supra*, 190 Cal.App.4th at p. 1329, italics added.)

23

Coalition's opposing evidence on that question, or whether Coalition's evidence raised a factual issue as to whether City should be estopped from asserting the statute of limitations.  (See *Hawkins v. Wilton*, *supra*, 144 Cal.App.4th at p. 940 [" 'Where the evidence presented by defendant does not support judgment in his favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff' "].)

## DISPOSITION

The judgment is reversed.  North Park Preservation Coalition shall be entitled to its costs on appeal.


O'ROURKE, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.